JEFFREY T. THOMAS, SBN 106409
  jtthomas@gibsondunn.com
ANNE Y. BRODY, SBN 252279
  abrody@gibsondunn.com
SEAN S. TWOMEY, SBN 279527
  stwomey@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800
Facsimile: 949.451.4220

Attorneys for Defendants ALLERGAN, INC.
and ALLERGAN BOTOX LIMITED

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| MIOTOX LLC, a California Limited Liability Company, | CASE NO. CV 14-08723-ODW (PJWx) |
| Plaintiff, | **ALLERGAN DEFENDANTS' OPPOSITION TO MOTION TO DISMISS** |
| vs. | **HEARING:** |
| ALLERGAN, INC., a Delaware Corporation; ALLERGAN BOTOX LIMITED, an Irish Corporation, and DOES 1-25 inclusive, | Date:     March 2, 2015<br>Time:     1:30 p.m.<br>Place:     Courtroom 11 –<br>          Spring St. Floor<br>Judge:    Hon. Otis D. Wright II |
| Defendants. | |

Gibson, Dunn &
Crutcher LLP

ALLERGAN DEFENDANTS' OPPOSITION TO MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.    Introduction ...................................................................................... 1

II.   Background ........................................................................................ 1

    A.    Allergan's License Agreement With Miotox ............................. 1

    B.    Miotox's Demand For Royalties After The Expiration Of The '468 Patent .............................................................................. 3

    C.    Procedural History ..................................................................... 4

III.  Argument .......................................................................................... 5

    A.    A Controversy Exists Between The Parties, Sufficient To Establish Declaratory Judgment Jurisdiction For Allergan's Counterclaims ........... 5

        1.    A Justiciable Case Or Controversy Exists Between Allergan And Miotox ...................................................... 6

        2.    A Decision On Miotox's Contract Claim Will Not Moot Allergan's Counterclaims ................................. 10

        3.    Miotox Does Not Have The Right To Limit This Action To The Contract Claim Of Its Complaint ................. 12

        4.    Allergan's Declaratory Judgment Counterclaim Of Unenforceability Due To Patent Misuse Presents A Justiciable Controversy ................................................ 13

    B.    Allergan's Patent Misuse Counterclaim Adequately States A Claim For Relief ............................................................ 15

        1.    Under *Per Se* Patent Misuse, Allergan's Patent Misuse Counterclaim Adequately States A Claim For Relief ................. 17

        2.    Allergan's Patent Misuse Counterclaim Adequately States A Claim For Relief Under The "Rule of Reason" Analysis ............. 19

        3.    Allergan's Theory Of Patent Misuse Is Not Foreclosed By Statute And Federal Circuit Precedent ........................... 21

IV.  Miotox's Request To Stay Allergan's Counterclaims Should Be Denied ........ 23

V.   Conclusion ...................................................................................... 24

Gibson, Dunn & Crutcher LLP

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ABB, Inc. v. Cooper Indus.,*
635 F.3d 1345 (Fed. Cir. 2011) ........................................................................ 12

*Am. Securit Co. v. Shatterproof Glass Corp.,*
268 F.2d 769 (3d Cir. 1959) ............................................................................. 20

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .......................................................................................... 16

*Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.,*
339 U.S. 827 (1950) .................................................................................... 20, 21

*Bayer CropScience AG v. Dow AgroSciences LLC,*
No. 10-1045 RMB/JS, 2011 WL 6934557 (D. Del. Dec. 30, 2011) .................. 15

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .................................................................................... 15, 16

*Brulotte v. Thys Co.,*
379 U.S. 29 (1964) .............................................................................. 17, 18, 21

*Eminence Capital, LLC v. Aspeon, Inc.,*
316 F.3d 1048 (9th Cir. 2003) ......................................................................... 24

*Ford Motor Co. v. United States,*
688 F.3d 1319 (Fed. Cir. 2012) ....................................................................... 13

*Grid Sys. Corp. v. Tex. Instruments,*
771 F. Supp. 1033 (N.D. Cal. 1991) ................................................................ 22

*Hon Hai Precision Indus. Co. v. Wi-LAN, Inc.,*
No. 12 Civ. 7900(SAS), 2013 WL 2322675 (S.D.N.Y. May 28, 2013) ............... 7

*In re Recombinant DNA Tech. Patent & Contract Litig.,*
850 F. Supp. 769 (S.D. Ind. 1994) ................................................................... 21

*Lear, Inc. v. Adkins,*
395 U.S. 653 (1969) .......................................................................................... 20

*Leite v. Crane Co.,*
749 F.3d 1117 (9th Cir. 2014) ........................................................................... 5

*Linzer Prods. Corp. v. Sekar,*
499 F. Supp. 2d 540 (S.D.N.Y. 2007) ................................................................ 7

*Lujan v. Nat'l Wildlife Fed'n,*
497 U.S. 871 (1990) .......................................................................................... 16

*Md. Casualty Co. v. Pac. Coal & Oil Co.,*
312 U.S. 270 (1941) ............................................................................................ 6

ALLERGAN DEFENDANTS' OPPOSITION TO MOTION TO DISMISS

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) ..................................................................6, 8, 9, 14, 15

*Metrologic Instruments, Inc. v. Symbol Techs., Inc.*,
   Nos. 06-3565, 254 Fed. Appx. 128, 2007 WL 3391339 (3d Cir. Nov. 15,
   2007) ................................................................................................... 10

*Natural Alts., LLC v. JM Farms*,
   No. 5:12-CV-333-KKC, 2013 WL 5467675 (E.D. Ky. Sept. 30, 2013)................. 6

*Powertech Tech. Inc. v. Tessera, Inc.*,
   660 F.3d 1301 (Fed. Cir. 2011) .......................................6, 8, 9, 10, 13, 14, 15

*Powertech Tech., Inc. v. Tessera, Inc.*,
   No. C 11-6121 CW, 2012 WL 3283420 (N.D. Cal. Aug. 10, 2012) ..................... 20

*Pride v. Correa*,
   719 F.3d 1130 (9th Cir. 2013) ............................................................... 16

*Princo Corp. v. Int'l Trade Comm'n*,
   616 F.3d 1318 (Fed. Cir. 2010) ............................................................. 17

*Rocform Corp. v. Acitelli-Standard Concrete Wall, Inc.*,
   367 F.2d 678 (6th Cir. 1966) ................................................................ 18

*SanDisk Corp. v. STMicroelectronics, Inc.*,
   480 F.3d 1372 (Fed. Cir. 2007) ............................................................. 12

*Scheiber v. Dolby Labs., Inc.*,
   293 F.3d 1014 (7th Cir. 2002) ........................................................... 21, 22

*Scheuer v. Rhodes*,
   416 U.S. 232 (1974)........................................................................... 16

*U.S. Philips Corp. v. Int'l Trade Comm'n*,
   424 F.3d 1179 (Fed. Cir. 2005) ......................................................... 21, 22

*Va. Panel Corp. v. MAC Panel Co.*,
   133 F.3d 860 (Fed. Cir. 1997) ....................................................17, 19, 21

*VDF FutureCeuticals, Inc. v. Sandwich Isles Trading Co.*,
   No. 11-00288 ACK-RLP, 2011 WL 6820122 (D. Haw. Dec. 27, 2011)............... 16

*Verance Corp. v. Digimarc Corp.*,
   No. 10-831, 2011 WL 2182119 (D. Del. June 2, 2011) ................................ 10

*Windsurfing Int'l, Inc. v. AMF, Inc.*,
   782 F.2d 995 (Fed. Cir. 1986) .............................................................. 19

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   395 U.S. 100 (1969)...................................................................... 20, 21

**Statutes**

35 U.S.C. § 271(d) ............................................................................. 17

ALLERGAN DEFENDANTS' OPPOSITION TO MOTION TO DISMISS

35 U.S.C. § 271(d)(5) ............................................................................ 21

**Other Authorities**

5B Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure* § 1357 (3d ed. 2004) ........................... 16

**Rules**

Federal Rule of Civil Procedure 8(a)(2) ................................................ 15

Gibson, Dunn &
Crutcher LLP

iv
ALLERGAN DEFENDANTS' OPPOSITION TO MOTION TO DISMISS

## I.   INTRODUCTION

Plaintiff Miotox LLC ("Miotox") and Defendants Allergan, Inc. and Allergan Botox Limited (collectively, "Allergan") have an actual controversy over Allergan's royalty obligations under the parties' patent license agreement (the "License Agreement").  Miotox's complaint herein is based on a single assertion:  Allergan has underpaid the royalties called for by the License Agreement.  Allergan disagrees.  Because Allergan's counterclaims are directly linked to this same controversy, the Court has subject matter jurisdiction over those counterclaims.  In fact, it will be impossible to obtain a full resolution of the fundamental issue herein—what royalties Allergan is required to pay Miotox—without rulings on the counterclaims.  For nearly a year, Miotox and Allergan have disagreed as to Allergan's royalty obligation under the License Agreement.  And, contrary to Miotox's contention, the controversy will likely continue even after the contract dispute raised by Miotox's complaint herein is resolved unless Allergan's counterclaims of non-infringement, invalidity, and patent misuse are resolved.  As such, this controversy is sufficient to establish the Court's jurisdiction over Allergan's counterclaims.  Miotox's Rule 12(b)(1) motion to dismiss Allergan's first through fourth counterclaims should thus be denied.

In addition, Miotox has failed to prove that Allergan's patent misuse counterclaim fails to state a claim for relief.  Under the pleading requirements of Federal Rule of Civil Procedure 8, Allergan has adequately alleged facts that are sufficient to support its patent misuse counterclaim.  Miotox's attack on the merits of the patent misuse claim fails as a matter of law, and at best, requires factual findings in Miotox's favor that cannot be made on a motion to dismiss.

## II.   BACKGROUND

### A.   Allergan's License Agreement With Miotox

Allergan and Miotech entered into an option agreement on July 31, 1997, giving Allergan the option to acquire an exclusive license to Miotech's patents relating to the treatment of migraine headaches using a botulinum toxin or other neurotoxins.

ALLERGAN DEFENDANTS' OPPOSITION TO MOTION TO DISMISS

Miotech assigned its patent rights to Miotox on October 23, 1998.  On October 30, 1998, Allergan exercised its option and entered into the License Agreement with Miotech.  The parties later amended the License Agreement to substitute Miotox as the correct licensor.

Under the License Agreement, Allergan agreed to pay royalties on "Net Sales" in exchange for a license to the Licensed Patents.  The License Agreement defines "Net Sales" as "the actual selling price of Licensed Product sold by LICENSEE, its Affiliate, or any sublicensee to others in countries in which Licensed Patents have been granted for the Licensed Use."  Crucial to the dispute here, "Licensed Product" is defined as "any medical product containing Botulinum Toxin or other toxin made, used, or sold by LICENSEE, its Affiliate, or any sublicensee thereof **whose use is covered by a Valid Patent Claim.**"  (emphasis added).  "Valid Patent Claim" is defined as "a bona fide, unexpired claim in the Licensed Patents for the Licensed Use which has not been held invalid by a final decision of a court or other governmental agency."  "Licensed Use" is defined as "the use of Licensed Product for the treatment of migraine headache[s]."  Based on these definitions provided by the License Agreement, Allergan owes a royalty on any sale of its botulinum toxin product, Botox, only if that sale results in Botox being used in a way that is covered by a valid, unexpired claim of a Licensed Patent, and that use involves the treatment of a migraine headache.

At the time the parties entered into the License Agreement, the sole United States patent covered by the Agreement was U.S. Patent No. 5,714,468 ("the '468 patent"), titled "Method for Reduction of Migraine Headache Pain."  The '468 patent, which issued on February 3, 1998, claimed methods for administering neurotoxins such as Botox to the face, cranium, or neck (including at either muscular or extramuscular sites) in order to treat migraine headaches.  Hence, Allergan paid royalties on all sales of Botox used to treat migraine headaches, since all such uses

1    were covered by the claims of the '468 patent.  The '468 patent expired on May 9,

2    2014.  Allergan has paid all royalties due to Miotox based on the '468 patent.

3    **B.    Miotox's Demand For Royalties After The Expiration Of The '468 Patent**

4            On November 21, 2013, with fewer than six months remaining before the '468

5    patent was due to expire, Miotox contacted Allergan about amending the list of

6    Licensed Patents included as Schedule 1 to the License Agreement.  Miotox presented

7    Allergan with a list of four patents and one patent application, all filed in 2012.  In

8    addition to these patents and patent applications, Miotox's complaint listed additional

9    patent applications filed in 2013 (together, the "New Patents").  The New Patents

10   cover specific methods for treating "post-traumatic migraine headaches,"

11   administering Botox or other toxins to certain extramuscular sites to treat migraine

12   headaches, and using neurotoxins to treat migraine-associated vertigo. These are

13   atypical uses of Botox; the vast majority of the uses of Botox for migraine headaches

14   do not involve these methods.

15           Allergan was not opposed to amending the License Agreement to add Miotox's

16   New Patents to the Agreement.  As part of this amendment, Allergan wished to verify

17   that the parties had the same understanding with regard to the royalty provision of the

18   License Agreement.  Clearly, based on the definition of  "Licensed Product" in the

19   Agreement, Allergan is required to pay royalties only on sales of Botox that are

20   covered by a valid, unexpired claim of the Licensed Patents.  Prior to the expiration of

21   the '468 patent, this meant that Allergan was required to pay royalties on all sales of

22   Botox that were used to treat migraine headaches, as the '468 patent broadly covered

23   general administration of botulinum toxins to treat migraine headaches without being

24   limited to a specific method or administration site.  However, once the '468 patent

25   expired on May 9, 2014, Allergan would only owe royalties on sales that resulted in

26   Botox being used for one of the methods covered by a valid claim of the New Patents.

27           To Allergan's surprise, Miotox disagreed with Allergan's interpretation of the

28   License Agreement.  Miotox argued that the royalty provision of the License

3

ALLERGAN DEFENDANTS' OPPOSITION TO MOTION TO DISMISS

Agreement requires Allergan to pay royalties on all sales of Botox relating to the treatment of migraine headaches, regardless of whether these sales are covered by a valid, unexpired claim in a Miotox patent included in the License Agreement.  Miotox acknowledges that the definition of "Licensed Product" expressly includes only products whose use is covered by such a valid, unexpired "Licensed Patent," but continues to insist that royalties are due on all sales of products for migraine headache treatment, regardless of patent coverage.  Under Miotox's interpretation of the License Agreement, Allergan owes royalties for all sales of Botox used for treating migraine headaches, even though the '468 patent, which covered the general administration of Botox to treat migraine headaches, has expired, and the New Patents cover a much narrower scope.

The consequences of adopting Miotox's position are extreme.  It is contending that even if there is never again a sale of Botox that results in a use that is covered by an unexpired Miotox patent, Allergan must pay royalties on *all* Botox sales for migraine headache treatment so long as Miotox holds a patent for any obscure, rarely (or never) used method that somehow relates to migraines.

Since the '468 patent expired and Miotox asserted its new position, Allergan and Miotox have had multiple rounds of discussions regarding the royalty provision of the License Agreement, through correspondence and meetings, in an attempt to resolve the dispute over Allergan's royalty obligation.  Both parties maintained that their interpretation of the royalty provision was the correct interpretation.

**C.    Procedural History**

On October 8, 2014, Miotox filed claims for breach of contract, unjust enrichment, and other related claims in the Superior Court of California, County of Los Angeles.  Allergan removed the case to this Court and counterclaimed for declaratory judgments of non-infringement and invalidity for several of the New Patents, as well as unenforceability with respect to all of the New Patents.  Specifically, Allergan seeks declaratory judgments of non-infringement of U.S. Patent No. 8,420,106 ("the '106

patent"), non-infringement of U.S. Patent No. 8,883,143 ("the '143 patent"), invalidity of U.S. Patent No. 8,617,569 ("the '569 patent"), and unenforceability of all of the New Patents due to patent misuse.  On December 29, 2014, Miotox filed a 12(b)(1) motion to dismiss all of Allergan's counterclaims for lack of subject matter jurisdiction and a 12(b)(6) motion to dismiss Allergan's patent misuse counterclaim for failure to state a claim upon which relief can be granted.

## III.   ARGUMENT

**A.     A Controversy Exists Between The Parties, Sufficient To Establish Declaratory Judgment Jurisdiction For Allergan's Counterclaims**

In its 12(b)(1) motion to dismiss, Miotox makes a factual attack on the Court's jurisdiction over Allergan's declaratory judgment counterclaims (commonly referred to as "declaratory judgment jurisdiction").  Miotox argues that (1) Allergan's counterclaims of non-infringement and invalidity do not present an actual controversy and would not resolve the parties' dispute over Allergan's royalty obligation; and (2) Allergan's counterclaim of patent misuse also does not present an actual controversy.

A 12(b)(1) motion to dismiss for lack of subject matter jurisdiction can be based on a facial attack or a factual attack.  *Leite v. Crane Co.*, 749 F.3d 1117, 1121–22 (9th Cir. 2014).  When the moving party brings a facial attack, the moving party alleges that the allegations in the complaint, even if true, are not sufficient for a finding of jurisdiction.  *Id.* at 1121.  All factual allegations of the complaint are treated as true in resolving a facial attack.  *Id.*  A factual attack is raised when the moving party introduces evidence to controvert factual allegations made in the complaint.  *Id.*  When the moving party brings a factual attack, the court can make findings on any disputed factual allegations.  *Id.*  The party opposing the motion to dismiss "bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met."  *Id.* at 1121–22.

Here, Allergan has satisfied its burden of proof that the requirements for subject matter jurisdiction have been met.  As detailed below, Allergan and Miotox have a

justiciable case or controversy over Allergan's royalty obligations under the License Agreement.  Indeed, Miotox acknowledges that the crux of the dispute raised by its complaint is the question of which Botox sales are royalty-bearing.  This controversy cannot be fully resolved without a decision on Allergan's counterclaims.  As such, the Court has jurisdiction over Allergan's counterclaims.

1. **A Justiciable Case Or Controversy Exists Between Allergan And Miotox**

The Supreme Court has clarified the standard for finding a justiciable case or controversy sufficient to sustain declaratory judgment jurisdiction in a similar dispute over royalty obligations under a license agreement.  In *MedImmune*, the Supreme Court held that the proper standard for evaluating whether a declaratory judgment claim presents a justiciable case or controversy is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Casualty Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

In *MedImmune*, the licensee sought declaratory judgments of non-infringement and invalidity of the licensor's patent, arguing that no royalties would be due under the license agreement if the patent were found invalid or not infringed.  *MedImmune*, 549 U.S. at 121–25.  The licensor alleged that royalties were due regardless of the patent's validity, as long as the patent was infringed.  *Id.* at 123–24.  Under these facts, the Supreme Court held that an actual controversy existed between the parties, such that declaratory judgment jurisdiction was not lacking.  *Id.* at 133–37; *see also Powertech Tech. Inc. v. Tessera, Inc.*, 660 F.3d 1301, 1310 (Fed. Cir. 2011) ("[T]he dispute between [the licensee] and [the licensor]—as to whether the license agreement requires royalty payments to be tied to valid patent coverage—is sufficient to support declaratory judgment jurisdiction."); *Natural Alts., LLC v. JM Farms,* No. 5:12-CV-333-KKC, 2013 WL 5467675, at *2–4 (E.D. Ky. Sept. 30, 2013) (holding that

declaratory judgment jurisdiction was proper over licensee's counterclaim in licensor's breach of contract action where the licensee ceased to pay royalties, arguing that the licensed patents were unenforceable, and the licensor insisted that royalties were due under the license regardless of enforceability of the licensed patents); *Hon Hai Precision Indus. Co. v. Wi-LAN, Inc.*, No. 12 Civ. 7900(SAS), 2013 WL 2322675, at *6–7 (S.D.N.Y. May 28, 2013) (finding a justiciable controversy sufficient to support licensee's declaratory judgment claims for invalidity and non-infringement where licensor had already filed a state court breach of contract action in response to licensee's refusal to pay royalties, and licensor argued that licensee's royalty obligation was more expansive than the licensed patent's scope); *Linzer Prods. Corp. v. Sekar*, 499 F. Supp. 2d 540, 558–60 (S.D.N.Y. 2007) (concluding declaratory judgment jurisdiction exists over licensee's claims of invalidity and unenforceability, where licensee argued no royalties were due on a certain process and licensor disagreed, as "[t]he interpretation of the Agreement and the validity and possible infringement of the patents-in-suit will determine whether [the licensee] must pay royalties or breach damages," noting that "the controversy would be resolved by the declaratory judgments [licensee] seeks" because "[s]uch judgments would provide [the licensee] with relief by clarifying whether royalties are owed, whether its processes infringe either or both of the patents-in-suit, whether those patents are valid, and what rights the parties have under the Agreement").

In this case, Allergan and Miotox have an ongoing dispute regarding the interpretation of the royalty provision in the License Agreement.  The Agreement states that royalties are due only on sales of "Licensed Products," i.e., sales of products that result in Botox being used in a way covered by a valid, unexpired claim of a Licensed Patent.  Thus, it is hard to imagine how this dispute can be fully resolved once and for all without a decision on (1) which of Miotox's New Patents are valid and (2) the scope of the New Patents (i.e., which of the Botox uses, as reported by the sales audit, are covered by at least one claim of the New Patents).  Under the Supreme

Court's *MedImmune* standard, Allergan's declaratory judgment claims present a justiciable controversy because a decision on those claims will be important to determining which sales are royalty-bearing.  Under these circumstances, there is a substantial controversy between parties with adverse legal interests of sufficient immediacy and reality.  *See also Powertech*, 660 F.3d at 1310 ("[T]he issue of contract interpretation is a merits issue, not appropriate to decision on a motion to dismiss under Rule 12(b)(1).").

Miotox attempts to analyze the "case or controversy" standard under both "Miotox's interpretation" and "Allergan's interpretation" of the License Agreement. This argument is flawed as it fails to acknowledge the core controversy in this case: The disagreement between Miotox and Allergan over what royalties Allergan must pay. Since royalties are tied to sales of products covered by a Miotox patent, it is highly unlikely this dispute can be resolved without deciding (1) which of the unexpired Miotox patents are valid and (2) which methods for which Botox is used are covered by the patents.   The Supreme Court and the Federal Circuit have already found that a royalties dispute like this one is a "case or controversy" sufficient to support declaratory judgment jurisdiction.  *MedImmune*, 549 U.S. at 133–37; *Powertech*, 660 F.3d at 1310.

Miotox attempts to distinguish *MedImmune* from the facts in this case on two bases.  First, Miotox argues that unlike the royalty obligation in *MedImmune*, Allergan's royalty obligation is not tied to practice of the Licensed Patents (according to Miotox's contract interpretation), and thus resolution of Allergan's declaratory judgment claims may not affect the royalties due under the License Agreement. Second, Miotox argues that in *MedImmune* the licensee remained in good standing by continuing to pay royalties, whereas in this case, Allergan has already breached the License Agreement.  Both of these arguments mischaracterize the Supreme Court's holding in *MedImmune*.

Gibson, Dunn &
Crutcher LLP

First, the *MedImmune* Court stated that the correct interpretation of the contract is not relevant to the question of whether a controversy exists.  *See MedImmune*, 549 U.S. at 135–36 (noting that "even if respondents were correct that the licensing agreement or the common-law rule precludes this suit, the consequence would be that respondents win this case *on the merits—not* that the very genuine contract dispute disappears, so that Article III jurisdiction is somehow defeated").  Notably, in *MedImmune*, though the parties may have agreed that the licensee's royalty obligation was tied to practice of the licensor's patents, the licensor expressly disputed that resolution of the licensee's claim for a declaratory judgment of invalidity would affect the licensee's royalty obligation.  *See id.* at 123 (stating the licensor's claim that "while there is a dispute over patent validity, the contract calls for royalties on an infringing product whether or not the underlying patent is valid").

Second, the *MedImmune* Court expressly noted that there was no question that an actual controversy would have existed if the licensee in *MedImmune* had refused to make royalty payments.  *Id.* at 128 (stating that there was "no dispute" that the standards for finding an actual controversy "would have been satisfied if petitioner had taken the final step of refusing to make royalty payments").  Here, Miotox alleges that Allergan has already breached the License Agreement, and thus an actual controversy exists based on Miotox's allegations alone.  And while Miotox argues that no patent controversy exists because it has filed a breach of contract action rather than an infringement action, the *MedImmune* Court rejected the need for a "reasonable apprehension" of an infringement suit, and held that a sufficient controversy existed despite the fact that the threat of an infringement suit was "remote, if not nonexistent." *Id.* at 128, 132 n.11.  Hence, Miotox's attempts to distinguish *MedImmune* from the case at hand are unavailing.  *See also Powertech*, 660 F.3d at 1310.

Miotox also cites two cases, *Metrologic* and *Verance*, which it claims support a finding of no justiciable controversy here.  But these two cases provide little support for Miotox's position.

In *Metrologic,* the Third Circuit reviewed the district court's summary judgment decision, not a Rule 12(b)(1) motion for lack of subject matter jurisdiction. *Metrologic Instruments, Inc. v. Symbol Techs., Inc.*, Nos. 06-3565, 06-3652, 254 Fed. Appx. 128, 2007 WL 3391339 (3d Cir. Nov. 15, 2007). The standards for deciding those two types of motions are, of course, vastly different, as a motion for summary judgment focuses on the merits of the claims, while a Rule 12(b)(1) motion focuses solely on the question of whether the court has jurisdiction. Additionally, the Third Circuit made no ruling relating to jurisdiction; the Court held only that summary judgment on the patentee's breach of contract claim could be granted without a finding of infringement. *Id.* at 132–33, *4. Thus, *Metrologic* is not relevant and sheds no light on the present issue.

The Delaware district court decision in *Verance* is also not applicable here. The royalty provision at issue in *Verance* differs greatly from the royalty provision in the License Agreement. In *Verance*, the licensee owed royalties on "Licensed Products and Services" that were defined as specific products made by the licensee, with no reference to the licensor's patents. *Verance Corp. v. Digimarc Corp.*, No. 10-831, 2011 WL 2182119, at *1 (D. Del. June 2, 2011). In contrast, Allergan owes royalties only on sales of "Licensed Products," which are explicitly defined to be only products whose use is *covered by a valid, unexpired claim* of a Miotox Licensed Patent. Thus, neither of the cases cited by Miotox are relevant to the issue presented by the case at hand, while the on-point authority holds that there is a justiciable controversy here. *See Powertech*, 660 F.3d at 1309–10 (holding that a dispute over whether royalties under a license agreement are tied to the validity or infringement of the licensed patents is a justiciable controversy sufficient to establish declaratory judgment jurisdiction, regardless of whether the licensee's interpretation of the contract is correct or not).

**2.      A Decision On Miotox's Contract Claim Will Not Moot Allergan's Counterclaims**

Adjudication of Allergan's non-infringement and invalidity counterclaims is needed for a complete resolution of Allergan's royalty obligation under the License Agreement.  Simply put, the parties require a clear definition of what products and patents Allergan must include in its calculation of the royalties due.  The License Agreement requires Allergan to pay royalties on all sales that result in Botox being used for a method that is *covered by a valid, unexpired patent claim* of the Licensed Patents.  Hence, resolution of Allergan's declaratory judgment counterclaims of invalidity and non-infringement would clarify what royalties are due.

If Allergan prevails on its claim that the '569 patent is invalid, no royalties will be due under that patent.  If Allergan prevails on its non-infringement counterclaims (which assert that Botox uses for the treatment of migraine headaches, as reported by the sales audit, are not covered by the claims in the '106 and '143 patents), it will not be required to pay royalties on certain sales that Miotox claims are royalty-bearing. Royalties due on the remaining two New Patents would be based on the sales of Botox or other toxins that are covered by a patent claim in one of those two patents. Therefore, adjudication of Allergan's non-infringement and invalidity counterclaims would completely resolve the dispute over Allergan's royalty obligation under the License Agreement.

Miotox argues that because Allergan has not challenged the validity or infringement of two of the New Patents, Allergan's declaratory judgment counterclaims are not yet ripe for adjudication because resolution of the declaratory judgment counterclaims will not resolve Allergan's royalty obligation.  In other words, it claims that Allergan must pay royalties on all migraine-related sales regardless of whether Miotox holds any patent that actually covers the methods for which Botox is used.  But that is not right.  Miotox's rights to royalties are tied to the scope of its valid, unexpired patents.  Thus, it is highly unlikely that a final, complete decision on what royalties are due can be rendered without decisions on the validity and scope of the patents on which Miotox relies.

Miotox appears to assume that the Court can only define Allergan's royalty obligation by finding that Allergan owes either royalties on all migraine-related Botox sales or no royalties at all.  But that is wrong.  As alleged in Allergan's counterclaims, under the royalty provision of the License Agreement, Allergan owes royalties only on sales of products whose use is *covered by a valid, unexpired patent claim* of the Licensed Patents.  Under this interpretation of the Agreement, a finding of invalidity or non-infringement for any of the New Patents would necessarily alter Allergan's royalty obligation, as Allergan would owe no royalties for any patent held invalid or not infringed.

### 3.     Miotox Does Not Have The Right To Limit This Action To The Contract Claim Of Its Complaint

Miotox argues that because it brought a breach of contract action rather than an infringement action against Allergan, there can be no genuine dispute sufficient to establish declaratory judgment jurisdiction over Allergan's patent-related counterclaims.  That is wrong as a matter of law.

The Federal Circuit has held that under the Supreme Court's *MedImmune* standard, "a specific threat of infringement litigation by the patentee is not required to establish jurisdiction."  *ABB, Inc. v. Cooper Indus.*, 635 F.3d 1345, 1348 (Fed. Cir. 2011).  In particular, the Federal Circuit recognized that *MedImmune* overruled the "reasonable apprehension" test previously promulgated by the Federal Circuit, which required that the plaintiff have a reasonable apprehension of an infringement suit, and established a more lenient standard for establishing declaratory judgment jurisdiction. *See id.* ("MedImmune rejected our prior, more stringent standard insofar as it included a requirement of a 'reasonable apprehension of imminent suit.'"); *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1378–80 (Fed. Cir. 2007) ("The Supreme Court's opinion in *MedImmune* represents a rejection of our reasonable apprehension of suit test.").

Here, Allergan and Miotox have an immediate and real controversy regarding the License Agreement's royalty provision, as Miotox itself admits.  This controversy is sufficient to establish declaratory judgment jurisdiction, and Allergan is not required to prove the existence of any other controversy between the parties.  *See Powertech*, 660 F.3d at 1310 ("[T]he dispute between [the licensee] and [the licensor]—as to whether the license agreement requires royalty payments to be tied to valid patent coverage—is sufficient to support declaratory judgment jurisdiction.").  Hence, the type of action Miotox has chosen to bring does not preclude Allergan from pursuing its counterclaims.  Indeed, Miotox's complaint herein alleges (correctly) that there is a dispute over what royalties are due, and that issue cannot be fully resolved without a decision on the counterclaims.

> **4.     Allergan's Declaratory Judgment Counterclaim Of Unenforceability Due To Patent Misuse Presents A Justiciable Controversy**

Miotox's argument that Allergan's counterclaim of unenforceability due to patent misuse does not present a justiciable controversy attacks the *merits* of Allergan's counterclaim, rather than the existence of declaratory judgment jurisdiction. As the Federal Circuit has noted, attacks on the merits of a declaratory judgment claim are not appropriately considered under a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.  *Ford Motor Co. v. United States*, 688 F.3d 1319, 1328 (Fed. Cir. 2012) (stating that "arguments concerning the merits of [the] claims are not appropriate for this jurisdictional inquiry" as "[i]t is well-established that a court's subject matter jurisdiction concerns its authority to take up a case, and not the case's ultimate resolution").

Here, Miotox's arguments do not address the existence of a controversy sufficient to establish declaratory judgment jurisdiction.  As described above, Allergan and Miotox disagree over whether the royalty obligation in the License Agreement is tied to valid patent coverage.  Miotox claims royalties are due without regard to whether it has any patent that, but for the License Agreement, Allergan would be

13

infringing.  Allergan claims that contract interpretation is wrong.  But Allergan also asserts that, if Miotox's interpretation of the License Agreement is correct, enforcement of that interpretation would result in patent misuse.  Miotox denies it would be misuse.  This controversy is sufficient to establish declaratory judgment jurisdiction for Allergan's counterclaim of unenforceability due to patent misuse, just as it is sufficient to establish declaratory judgment jurisdiction for Allergan's counterclaims of non-infringement and invalidity.

Miotox acknowledges this dispute exists, but nevertheless contends there is no justiciable patent misuse controversy because its interpretation of the License Agreement would not, in fact, result in patent misuse.  Thus, Miotox's position is actually an attack on the merits of Allergan's counterclaims, and thus is "not appropriate to decision on a motion to dismiss under Rule 12(b)(1)."  *Powertech*, 660 F.3d at 1310; *see MedImmune*, 549 U.S. at 135–36 ("[T]he consequence would be that respondents win this case *on the merits—not* that the very genuine contract dispute disappears, so that Article III jurisdiction is somehow defeated.").  Thus, these arguments are not relevant to the determination of whether the court has declaratory judgment jurisdiction over Allergan's patent misuse counterclaim.

Similarly, Miotox's claim that the existence of "predicate issues of contract interpretation that must be resolved" renders Allergan's patent misuse counterclaim not ripe for adjudication contradicts the teachings of the Supreme Court and the Federal Circuit.  As discussed above, both the Federal Circuit and the Supreme Court have held that such issues of contract interpretation are issues that go to the *merits* of a claim, not to the question of whether a controversy exists sufficient to establish declaratory judgment jurisdiction.  *MedImmune*, 549 U.S. at 135–36; *Powertech*, 660 F.3d at 1310.  The contract dispute remains, providing an Article III controversy for declaratory judgment jurisdiction, regardless of which party's contract interpretation is correct.  *MedImmune*, 549 U.S. at 135–36; *Powertech*, 660 F.3d at 1310.  Both courts have also noted that these contract interpretation issues should not be resolved on a

1  motion to dismiss under Rule 12(b)(1).  *MedImmune*, 549 U.S. at 135–36; *Powertech*,

2  660 F.3d at 1310.  Allergan's patent misuse counterclaim asserts that Miotox's

3  contract interpretation would result in an illegal exercise of patent rights, and so

4  presents a controversy sufficient to assert declaratory judgment jurisdiction.

5        The bottom line here is that regardless of how the contract interpretation issue

6  before the Court is decided, one or more of Allergan's counterclaims must be decided.

7  If Miotox's interpretation of the License Agreement prevails, Allergan's patent misuse

8  claim must be resolved.  If Allergan is correct that its royalty obligation is linked to the

9  scope of Miotox's valid, unexpired patents, then the invalidity and non-infringement

10  declaratory relief claims must be decided.  All of these claims go to the same

11  fundamental question that Miotox has raised—what royalties are due—and thus they

12  are all properly before the Court.

13  **B.**    **Allergan's Patent Misuse Counterclaim Adequately States A Claim For**

14         **Relief**

15        Miotox's 12(b)(6) motion to dismiss Allergan's counterclaim of patent misuse

16  fails as a matter of law.  Under Federal Rule of Civil Procedure 8(a)(2), a pleading is

17  only required to have "a short and plain statement of the claim showing that the

18  pleader is entitled to relief."  *Id.*  This requirement is intended to "give the defendant

19  fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl.*

20  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).  The

21  heightened pleading standard of Rule 9(b) does not apply here, despite Miotox's

22  attempts to implicitly hold Allergan to that standard, as the heightened standard only

23  applies to patent misuse claims that are based on fraud or inequitable conduct.  *See*

24  *Bayer CropScience AG v. Dow AgroSciences LLC*, No. 10-1045 RMB/JS, 2011 WL

25  6934557, at *4 (D. Del. Dec. 30, 2011) (rejecting the application of a heightened

26  pleading standard to claims of patent misuse not sounding in fraud); *VDF*

27  *FutureCeuticals, Inc. v. Sandwich Isles Trading Co.*, No. 11-00288 ACK-RLP, 2011

28

1  WL 6820122, at *7–8 (D. Haw. Dec. 27, 2011) (holding that the heightened pleading

2  standard applies to patent misuse claims based on inequitable conduct).

3      The Supreme Court has held that "[t]o survive a motion to dismiss, a complaint

4  must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

5  plausible on its face,'" where "[a] claim has facial plausibility when the plaintiff pleads

6  factual content that allows the court to draw the reasonable inference that the defendant

7  is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

8  ("The plausibility standard is not akin to a 'probability requirement,' but it asks for

9  more than a sheer possibility that a defendant has acted unlawfully.").  A complaint

10  "does not need detailed factual allegations," so long as the factual allegations are

11  "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at

12  555.

13      When deciding a 12(b)(6) motion to dismiss, the court assumes that "all

14  allegations in the complaint are true (even if doubtful in fact)" and all reasonable

15  inferences are drawn in the complainant's favor. *Id.* at 555–56 ("[O]f course, a well-

16  pleaded complaint may proceed even if it strikes a savvy judge that actual proof of

17  those facts is improbable, and 'that a recovery is very remote and unlikely.'") (quoting

18  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see Pride v. Correa*, 719 F.3d 1130,

19  1133 (9th Cir. 2013) ("[U]nder Rule 12(b)(6), all factual allegations in [the] complaint

20  are taken as true and all reasonable inferences are drawn in [complainant's] favor.").

21  To decide 12(b)(6) motions, courts presume that "general allegations embrace those

22  specific facts that are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed'n*,

23  497 U.S. 871, 889 (1990).  The moving party bears the burden of proof that no claim

24  exists.  5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §

25  1357 (3d ed. 2004).

26      Under Federal Circuit law, the "key inquiry" in evaluating a patent misuse claim

27  is "whether, by imposing the condition in question, the patentee has impermissibly

28  broadened the physical or temporal scope of the patent grant and has done so in a

1   manner that has anticompetitive effects." *Princo Corp. v. Int'l Trade Comm'n*, 616

2   F.3d 1318, 1328 (Fed. Cir. 2010).  This standard can be met in two ways.  The

3   patentee's actions may fall into a *per se* patent misuse category, or patent misuse can

4   be shown under the "rule of reason."  *Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d

5   860, 869 (Fed. Cir. 1997).  Congress placed limitations on the patent misuse doctrine

6   through the enactment of 35 U.S.C. § 271(d), "establish[ing] that [certain] specific

7   practices may not support a finding of patent misuse." *Va. Panel*, 133 F.3d at 869.

8         Here, Allergan's patent misuse counterclaim is an alternative to Allergan's

9   contract interpretation position; i.e., if the Court adopts Miotox's contract

10  interpretation, then Miotox has conditioned payment of royalties on sales that do not

11  result in infringement.  Allergan contends that, if Miotox's contract interpretation is

12  correct, the *per se* patent misuse rule applies here.  If, however, the Court finds that,

13  based on the facts present here, the *per se* rule does not apply, then the "rule of reason"

14  analysis would apply.  In either case, Allergan's patent misuse counterclaim

15  adequately states a claim for relief.  At best, Miotox's attack on Allergan's patent

16  misuse counterclaim requires factual findings in Miotox's favor that cannot be made

17  on a motion to dismiss.

18         **1.    Under *Per Se* Patent Misuse, Allergan's Patent Misuse Counterclaim**

19              **Adequately States A Claim For Relief**

20         Allergan's patent misuse counterclaim adequately states a claim for relief under

21  the *per se* patent misuse rule.  Under the *per se* patent misuse rule, certain practices

22  have been identified by the courts "as constituting per se patent misuse, including so-

23  called 'tying' arrangements in which a patentee conditions a license under the patent

24  on the purchase of a separable, staple good . . . and arrangements in which a patentee

25  effectively extends the term of its patent by requiring post-expiration royalties." *Va.*

26  *Panel*, 133 F.3d at 869.  The Supreme Court addressed the latter type of misuse in

27  *Brulotte v. Thys Co.*, 379 U.S. 29, 32–33 (1964).  After analyzing a license agreement

28  under which royalties continued to be due despite the expiration of all patents actually

practiced by the licensees, the Court held that "a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful per se." *Id.* at 30–33 (noting that, as the license drew "no line between the term of the patent and the post-expiration period," such that the same royalties were due even after the patent had expired, "[t]he contracts [were] . . . on their face a bald attempt to exact the same terms and conditions for the period after the patents have expired as they do for the monopoly period").

Applying the *Brulotte* holding to a license covering multiple patents and the improvements thereon, the Sixth Circuit held that a contract that "contains no diminution of license fee at the expiration of the most important patent and contains no termination clause at the will of the licensee, constitutes, in effect, an effort to continue to collect royalties on an expired patent." *Rocform Corp. v. Acitelli-Standard Concrete Wall, Inc.*, 367 F.2d 678, 681–82 (6th Cir. 1966) (finding such a practice to be patent misuse).

Under the *per se* patent misuse principles given in *Brulotte*, Allergan has adequately stated a claim for relief. Allergan has alleged that Miotox is seeking royalties on all sales of Botox for the treatment of migraine headaches even though the original '468 patent, which had covered this general administration of botulinum toxin to treat migraine headaches, has expired. D.N. 6, Countercl. ¶¶ 38–41. Allergan has alleged that Miotox is attempting to extract post-expiration royalties, as Miotox demands that Allergan pay the same royalties now (after the '468 patent, which was the most important patent, has expired) as it did previously, regardless of the actual patent coverage of the New Patents. *Id.* In other words, although the royalties are compensation for a patent license, Miotox is demanding royalties that are completely untethered to the scope or duration of its valid, unexpired patents. Under *Brulotte* and *Rocform*, that is *per se* patent misuse. Thus, Allergan has alleged sufficient facts to provide notice to Miotox of the grounds for Allergan's patent misuse counterclaim, and has adequately stated a claim for relief under *per se* patent misuse.

Miotox argues that Allergan's factual allegations are deficient because Allergan has not alleged that Miotox's actions are "anticompetitive in nature" and "unlawfully restrain competition in a defined relevant market." However, as stated by the Federal Circuit in *Windsurfing* (which Miotox cites for support of its argument), proof of an anticompetitive nature or unlawful restraint of competition is not needed when a patentee's practices are shown to be *per se* patent misuse. *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1001–02 (Fed. Cir. 1986) ("To sustain a misuse defense involving a licensing arrangement *not held to have been per se anticompetitive by the Supreme Court*, a factual determination must reveal that the overall effect of the license tends to restrain competition unlawfully in an appropriately defined relevant market.") (emphasis added). Therefore, anticompetitive impact is not a required element under the *per se* patent misuse rule, and is not relevant to the determination of whether Allergan has adequately stated a claim for relief under the *per se* patent misuse doctrine.

### 2.   Allergan's Patent Misuse Counterclaim Adequately States A Claim For Relief Under The "Rule of Reason" Analysis

In the alternative, Allergan has alleged sufficient facts to withstand Miotox's Rule 12(b)(6) motion to dismiss under the "rule of reason" analysis for patent misuse. When the patentee's practices are "neither *per se* patent misuse nor specifically excluded from a misuse analysis by § 271(d)," and "the practice has the effect of extending the patentee's statutory rights . . . with an anti-competitive effect," a court must analyze the practice "in accordance with the 'rule of reason.'" *Va. Panel*, 133 F.3d at 869. Under a "rule of reason" analysis, "the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect." *Id.* (internal quotation marks omitted). A complaint for a patent misuse claim must plead that the patentee "impermissibly broadened the 'physical or

temporal scope' of the patent grant with anticompetitive effect." *Powertech Tech., Inc. v. Tessera, Inc.*, No. C 11-6121 CW, 2012 WL 3283420, *4–6 (N.D. Cal. Aug. 10, 2012) (internal quotation marks omitted).

Here, Allergan alleged that after the '468 patent expired on May 9, 2014, Miotox continued to demand the same royalties, regardless of whether the Botox sales were covered by any valid, unexpired patent claims of the Licensed Patents.  D.N. 6, Countercl. ¶¶ 34–41.  By continuing to demand royalties on all sales of Botox used to treat migraine headaches, even where no current Miotox patent applies, Miotox is attempting to broaden the temporal scope of the original '468 patent.

Allergan also alleges that Miotox's attempts to broaden the scope and duration of its patents have had an anticompetitive effect.  D.N. 6, Countercl. ¶¶ 37–44, 70–72.  In fact, if Miotox's interpretation were correct, Allergan's royalty obligation could be extended *forever* by Miotox obtaining patents for obscure, unrealistic uses so long as these patents contain any reference to "migraine."  Hence, Allergan's patent misuse counterclaim sufficiently states a claim for relief under the "rule of reason" analysis.

In applying the "rule of reason" analysis, some courts have focused on the question of whether the royalty provision of the license was agreed to out of convenience or coercion.  *See, e.g.*, *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 834 (1950) (finding that royalties based on total sales could represent "the most convenient method of fixing the business value of the privileges granted"), *overruled on other grounds by Lear, Inc. v. Adkins*, 395 U.S. 653, 671 (1969); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 135–41 (1969) (distinguishing between royalty provisions chosen out of convenience and royalty provisions forced upon the licensee); *see also Am. Securit Co. v. Shatterproof Glass Corp.*, 268 F.2d 769, 775–77 (3d Cir. 1959) (finding a license that required payment of royalties until the last of the patents expired to be patent misuse because the licensee had been compelled "to accept a package of patents or none at all").  The Supreme Court has stated that patent misuse may result if the licensor coerced the licensee into

accepting a royalty provision based on total sales.  *See Automatic Radio*, 339 U.S. at 834; *Zenith Radio*, 395 U.S. at 135–41.

Allergan has alleged sufficient facts to show that the royalty provision of the License Agreement was not formed out of convenience.  Allergan alleges that the royalty provision in the License Agreement is tied to valid patent coverage, and is not a royalty rate based on total sales regardless of patent usage.  D.N. 6, Countercl. ¶¶ 33–41, 70–72.  Thus, Allergan's royalty obligation was not designed in an attempt to simplify the calculation of royalties by using a royalty rate on all sales; Allergan was agreeing only to pay for actual use of the Licensed Patents.  *See Zenith Radio*, 395 U.S. at 137–39.  If Miotox is successful in enforcing a contrary interpretation, under which Allergan is forced to pay royalties without regard for the scope of Miotox's patent rights, it will have coerced Allergan to do so, and will be guilty of patent misuse.

### 3.    Allergan's Theory Of Patent Misuse Is Not Foreclosed By Statute And Federal Circuit Precedent

Miotox argues that Allergan's theory of patent misuse is foreclosed by 35 U.S.C. § 271(d)(5) and *U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179 (Fed. Cir. 2005).  But Miotox is incorrect.

Section 271(d)(5) changed the *per se* patent misuse rules related to tying agreements, but the statute did not impact the *per se* rule for post-expiration royalties given in *Brulotte.  See Scheiber v. Dolby Labs., Inc.*, 293 F.3d 1014, 1019–20 (7th Cir. 2002) (holding that *Brulotte* was not affected by Section 271(d)(5), as Section 271(d)(5) "is explicitly limited to tying"); *Va. Panel Corp.*, 133 F.3d at 869; *In re Recombinant DNA Tech. Patent & Contract Litig.*, 850 F. Supp. 769, 775 (S.D. Ind. 1994) (finding that Section 271(d)(5) "placed limitations on the finding of patent misuse in tying arrangements" by "eliminat[ing] *per se* findings of patent misuse in such situations").  Allergan's theory of *per se* patent misuse is based on the *per se* rule for post-expiration royalties established by *Brulotte*, not on the existence of a tying agreement.  Therefore,

1    Section 271(d)(5) has no effect on Allergan's patent misuse counterclaim.  This is

2    simply not a tying case as there are no tying allegations by either party.

3        Additionally, Section 271(d)(5) applies only to situations in which a patent

4    owner is "entitled to relief for infringement or contributory infringement"; it does not

5    apply if the plaintiff has alleged only breach of a license agreement.  *Scheiber*, 293

6    F.3d at 1019; *see also Grid Sys. Corp. v. Tex. Instruments*, 771 F. Supp. 1033, 1037

7    n.2 (N.D. Cal. 1991) ("On its face, Section 271(d) relates only to the defense of patent

8    misuse as a defense to an infringement claim.").  In *Scheiber*, the court relied on the

9    language of Section 271(d)(5), which states that "no patent owner otherwise entitled to

10   relief for infringement or contributory infringement of a patent shall be denied relief or

11   deemed guilty of misuse . . . ," in holding that Section 271(d)(5) does not apply to a

12   suit for enforcement of a license agreement.  *Scheiber*, 293 F.3d at 1019.  Miotox

13   brought a breach of contract action, not an infringement action.  Thus, Section

14   271(d)(5) does not apply here, and cannot foreclose Allergan's theory of patent misuse.

15       *U.S. Philips* is also not applicable here.  Miotox cites to this case only for the

16   proposition that licensing a set of patents for a price not tied to practice of particular

17   patents is not patent misuse.  In *Philips*, the court analyzed the applicability of *per se*

18   patent misuse to a license agreement tying nonessential patents with essential patents.

19   The licensor charged a uniform fee to practice the patent bundle, regardless of how

20   many or which patents were actually practiced by the licensees.  *Philips*, 424 F.3d at

21   1182.  *Philips* is inapposite because Allergan does not argue that licensing a bundle of

22   patents together for a set fee is patent misuse.  Allergan's patent misuse counterclaim

23   is based on Miotox's attempts to force Allergan to agree to a royalty structure that

24   impermissibly broadens the scope of Miotox's patents.  Furthermore, unlike the

25   licensees in *Philips*, Allergan did not agree to pay a uniform licensing fee for the

26   Licensed Patents regardless of whether Allergan actually practiced any of the Licensed

27   Patents.  Instead, Allergan only agreed to pay royalties on products whose use is

28   covered by a valid, unexpired claim of the Licensed Patents.  In addition, the New

Patents were never considered when the License Agreement was negotiated and executed in 1998, as the New Patents were filed approximately 14 years later. The only patents Allergan considered when entering into the License Agreement were the '468 patent and its related counterparts. Allergan never agreed to pay a uniform licensing fee for a bundle of patents regardless of whether it actually practiced any of them, especially with respect to the New Patents that at the time did not even exist yet. Thus, *Philips* does not foreclose Allergan's patent misuse counterclaim.

## IV.   MIOTOX'S REQUEST TO STAY ALLERGAN'S COUNTERCLAIMS SHOULD BE DENIED

Miotox has requested this Court to, in the alternative, stay Allergan's counterclaims pending the resolution of Miotox's breach of contract claim. Allergan opposes this stay request as it would result in inefficient piece-meal litigation. Moreover, contrary to Miotox's position it is unlikely that resolving Miotox's breach of contract claim would fully resolve the parties' dispute regarding Allergan's royalty obligation, without needing to decide Allergan's counterclaims.

If Allergan's interpretation of the License Agreement is correct, such that royalties are tied to valid patent coverage, then Allergan's non-infringement and invalidity counterclaims must be decided in order to resolve Allergan's royalty obligation. Without knowing which Botox sales are within the scope of the '106 and '143 patents (which will be determined under Allergan's non-infringement counterclaims), and whether the '569 patent is invalid, the parties will not know whether Allergan owes any royalties on those patents. Thus, Allergan's invalidity and non-infringement counterclaims must be decided if, as the License Agreement clearly states, there is a link between the royalties due and the scope of Miotox's valid, unexpired patents.

If Miotox's interpretation of the royalty provision is correct, resolution of Allergan's patent misuse counterclaim will be necessary to determine if Miotox may legally demand the royalties it has thus far insisted upon. And resolution of Allergan's

invalidity counterclaim would clarify whether the '569 patent should be incorporated into the License Agreement as it is Allergan's position that an invalid patent should not be considered a "Licensed Patent."

Given the high likelihood that Allergan's counterclaims will have to be decided, it would be quite inefficient to bifurcate this action based on the issues raised by the complaint and the issues raised by the counterclaims. For example, it is almost certain that many of the same documents and the testimony of many of the same witnesses will be relevant to both sets of issues. Completing all discovery on the complaint and only then starting discovery again on the counterclaims would result in duplicative work and extend the schedule for this case beyond what is reasonable. After all discovery is complete, the Court can structure and phase the trial in any way it sees fit, but it makes no sense at this stage of the case to impose any stay or bifurcation order. Miotox's request to stay Allergan's counterclaims should be denied.

## V.   CONCLUSION

For the foregoing reasons, Allergan respectfully requests that the Court deny Miotox's Motion to Dismiss. Additionally, Allergan requests that the Court deny Miotox's request to stay Allergan's counterclaims pending resolution of Miotox's breach of contract claim. In the alternative, should the Court grant Miotox's motion in whole or in part, Allergan respectfully requests leave to amend its counterclaims. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003) (holding that "leave [to amend a pleading] shall be freely given when justice so requires . . . [and] [t]his policy is to be applied with extreme liberality" and stating that "there exists a *presumption* . . . in favor of granting leave to amend") (internal quotation marks omitted).

1 | Dated:  February 2, 2015

2

3

4

JEFFREY T. THOMAS
ANNE Y. BRODY
SEAN S. TWOMEY
GIBSON, DUNN & CRUTCHER LLP

By: /s/ Jeffrey T. Thomas
      Jeffrey T. Thomas

Attorneys for Defendants
ALLERGAN, INC. and ALLERGAN BOTOX
LIMITED